THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MARTIN RAY WILLIAMS, Defendant-Appellant.

Third District No. 82—401

Opinion filed September 7, 1983.—Rehearing denied January 19, 1984.

BARRY, J., dissenting.

Robert Agostinelli and Pamela Peters, both of State Appellate Defender's Office, of Ottawa, for appellant.

John A. Barra, State's Attorney, of Peoria (John X. Breslin and Vicki R. Wright, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

The defendant, Martin Ray Williams, appeals from his conviction of armed robbery and murder. The sole issue on appeal is whether the court erred in ruling that the testimony of a proposed witness was inadmissible hearsay.

The defendant was convicted on the basis of his accountability for the actions of Donald Grant. Grant was convicted of the 1976 killing of a security guard at the Red Fox store during his armed robbery of the store. The State established during the defendant's trial that the defendant drove Grant to the Red Fox on the day of the shooting. The defendant knew that Grant was carrying the gun on this day. The defendant saw Grant load the gun immediately prior to Grant's entry into the Red Fox store. There was conflicting evidence, however, as to whether the defendant waited outside the store for Grant or drove away immediately after Grant left the car.

Gladys Underwood was Grant's girlfriend. She testified at Grant's

trial that Grant admitted to her that he had shot the security guard. The defendant sought to have Underwood testify during his trial as to the substance of the conversation between Grant and Underwood. Underwood would have testified that Grant never mentioned that the defendant participated in the robbery or shooting. She would also have testified that Grant stated that the shooting was the result of a dispute between himself and the security guard. This evidence, according to the defendant, would have negated any inference of a common plan or scheme between Grant and the defendant in committing the armed robbery and murder. The defendant contended that Grant's statements were admissible, despite being hearsay evidence, as a declaration against penal interest.

During the argument before the trial court on the admissibility of Underwood's testimony, counsel for the defendant avowed that Underwood would testify that Grant's statements were made to her shortly after the shooting occurred. The State avowed that Underwood would testify that she was unsure of when Grant spoke to her and that Grant's admission might have been made two or three days after the shooting. Following further discussion, the trial court held that Underwood's testimony was inadmissible because of the amount of time which had elapsed between the shooting and the admission by Grant, and because of the ambiguity of Grant's statement. It is from this ruling that the defendant appeals.

The principles of law relevant to the admissibility in criminal prosecutions of hearsay declarations against penal interest are set forth in *Chambers v. Mississippi* (1973), 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038. The court in *Chambers* recognized that a witness may testify to a declaration against penal interest made by a third party which exculpates a defendant, even though it violates the hearsay rule, when sufficient *indicia* of reliability are present. The court utilized four factors in determining the reliability of such out-of-court statements: (1) the statement must be made to a close acquaintance shortly after the crime occurred; (2) the statement must be corroborated by other evidence; (3) the statement must be against the declarant's interest; and (4) the declarant is available for cross-examination. (410 U.S. 284, 300, 35 L. Ed. 2d 297, 312, 93 S. Ct. 1038, 1048.) The Illinois Supreme Court adopted the *Chambers* analysis in *People v. Craven* (1973), 54 Ill. 2d 419, 299 N.E.2d 1.

In the instant case, the second, third and fourth factors are present. Grant's statement was clearly corroborated by other evidence. The statement was also clearly against his interest. Grant himself was in custody and therefore was available for cross-examination,

although a grant of immunity for these proceedings might have been necessary. A question remains, however, as to whether the time element of the first factor is satisfied.

As noted earlier, the lower court was presented with conflicting avowals by the State and the defendant's attorney. The court's decision was complicated further by the fact that Underwood was attempting to avoid testifying at trial. She failed to appear in court on the morning she was to testify, despite the fact that a writ of attachment had been issued for her. Underwood was therefore unavailable to clarify at what time Grant's declaration was made when the court determined the admissibility of her testimony. Finally, the arguments of counsel were directed primarily to admissibility of the testimony under the "excited utterance" exception to the hearsay rule. The "declaration against interest" exception to the hearsay rule, although raised, was never fully addressed by the court or counsel.

The defendant incorrectly argues that the discrepancy in the evidence as to the time at which Grant's statement was made goes only to Underwood's credibility and not the admissibility of Underwood's testimony. The trial court was required, under the *Chambers* analysis, to determine whether the declaration was made "shortly after the crime occurred" in order to determine whether Underwood's testimony was sufficiently reliable so that it would be admissible as an exception to the hearsay rule. A decision as to the time of the declaration was critical to the court's determination of the admissibility of Underwood's testimony.

Unfortunately, the lower court was presented only with conflicting avowals as evidence of the timing of Grant's declaration. This court has noted that the four-part test set forth in *Chambers* is a barrier to those hearsay declarations which might result in a compromise of the integrity of the fact-finding process of the courts. (*People v. Foster* (1978), 66 Ill. App. 3d 292, 383 N.E.2d 788.) It was incumbent upon the defendant to satisfy the *Chambers* test and establish the reliability of Grant's declaration. The defendant failed to do this.

The facts of the instant case demonstrate, however, that the defendant was not afforded a full opportunity to present evidence establishing the four factors set forth in *Chambers*. The issue of the admissibility of Underwood's testimony arose in connection with a request by the defendant that the court institute further proceedings to compel Underwood's attendance at trial. The court based its decision as to what procedures would be instituted against Underwood on the admissibility of her trial testimony. It is clear that Underwood's presence was itself necessary in order for the trial court to determine the

admissibility of her testimony. Instead, the issue of admissibility was decided before the court determined what proceedings would be instituted against Underwood. The court was thereby forced to resolve the issue of admissibility on the basis of the avowals by counsel, rather than the statements of Underwood herself. Due to the absence of Underwood and the confusion during argument by counsel as to the basis for the admissibility of the contents of Underwood's testimony, evidence directly establishing the time of Grant's declaration to Underwood was never tendered.

■ We believe that the defendant should have an opportunity to demonstrate that Underwood should have been allowed to testify as to Grant's declaration. The defendant should have been granted whatever process was necessary to compel her attendance. For this reason, we affirm the judgment of the lower court but remand the cause for proceedings in which the defendant will have an opportunity to present additional evidence establishing that the proposed testimony by Underwood was admissible.

The judgment of the circuit court of Peoria County is affirmed and the cause is remanded for further proceedings consistent with this opinion. If on remand it is determined that Underwood's testimony was improperly excluded, the defendant will be granted a new trial. If no error is found in the court's exclusion of Underwood's testimony, the judgment of the circuit court remains in full force and effect.

Affirmed and remanded.

SCOTT, J., concurs.

JUSTICE BARRY, dissenting:

While I generally subscribe to the majority's analysis of the issue presented by this case, I cannot agree with my colleagues' disposition of the cause. In my opinion, the majority's failure to bridge the gap between the possible commission of an evidentiary error and the granting of a new trial constitutes a fatal flaw in an otherwise well-reasoned discussion of *Chambers* as it applies to these facts.

I do not find reversible error on these unique facts even if it could be established that Underwood's testimony was admissible under the *Chambers* test. The error in excluding it was, I believe, harmless beyond a reasonable doubt. Underwood's testimony, even if it were totally consistent with what defense counsel avowed it would be, would have added little, if anything of substance, beyond what had been ad-

mitted at trial through the testimony of defense witness, Frank Bell.

Bell had worked with the defendant at the "Cozy Corner" nightclub the evening of May 24, 1976. In the early morning after work, the defendant drove Bell home and the two arranged to go fishing along with Grant later that morning. According to Bell, on their way to the fishing hole a radio bulletin was aired concerning the shooting of a security guard at the Red Fox. Bell said that at that time Grant stated that he had shot the guard. Bell's testimony, like Underwood's, tended to support the defendant's theory that Grant's failure to discuss the defendant's participation thereby negated the defendant's guilt by accountability. The jury's verdict of guilty establishes that the jurors did not embrace the defendant's theory as supported by Bell's testimony. The jury was entitled to reject the defendant's theory.

Having reviewed the record before us, I am convinced that the totality of the evidence of the defendant's participation and guilt was overwhelming. The parties are well-acquainted with the facts and they need not be repeated here. Suffice it to say that even if the anticipated omitted testimony were presented to the finder of fact, the defendant's guilt would still be proved beyond a reasonable doubt.

I see no reason to perpetuate this cause by conducting further posttrial proceedings which would not, in any event, alter the outcome. I would affirm the defendant's conviction. For the foregoing reasons, I respectfully dissent.